BROADWATER, RESPONDENT, *v.* KENDIG, CITY TREASURER, ET AL., APPELLANTS.

(No. 6,223.)

(Submitted October 20, 1927. Decided November 18, 1927.)

[261 Pac. 264.]

*Cities and Towns — Officers — Increase of Salaries During Terms — Inapplicability of Constitutional Provision — Ordinances to Take Effect in Futuro are Laws in Praesenti.*

Cities and Towns — Increase of Salaries of Officers During Term — Constitutional Provision Inapplicable.
1. *Held,* that the provision of section 31, Article V of the state Constitution that no law shall increase or diminish the salary of any public officer after his election or appointment has reference to Acts of the legislative assembly and not to city ordinances.

Same—Powers—Ordinances—Nature of Enactments.
2. A city is a body politic and corporate, established by law to assist in the government of the state, with delegated authority to regulate and administer its local and internal affairs, without powers other than those expressly conferred; its ordinances are its laws as distinguished from the laws enacted by the state legislature.

Same—Ordinance to Take Effect *in Futuro* is Law *in Praesenti.*
3. An ordinance, like a statute, to take effect *in futuro* is a law *in praesenti;* it has a potential existence despite the fact that its effective day is postponed.

---

2. See 19 R. C. L. 688, 693.

[80 Mont. 515.]

Same—Increase of Salary of Mayor at Close of First Term Properly
   Payable on Assumption of Office on Subsequent Term.
   4.  *Held*, that the provision of section 5026, Revised Codes 1921,
   that the salary of a city officer shall not be increased or dimin-
   ished during his term of office, means the term the officer is then
   serving, and that therefore, under the rule above (par. 4), where
   the salary of a mayor was increased by ordinance near the close
   of his first term, which increase could not, under section 5060,
   become effective until after his second term had commenced, the
   increase was made during his prior term and not during the term
   he was then serving, and the officer was entitled thereto.
Same—Increase of Salaries of Officers During Terms—Constitutional
   and Statutory Provisions to be Strictly Enforced, When.
   5.  The rule established by section 31, Article V, of the Consti-
   tution as to increase of salary of a state officer after election or
   appointment, as well as by section 5026, Revised Codes, on the
   same subject with relation to city officers, must be strictly en-
   forced, provided the reason underlying it is present; whenever the
   reason for it ceases, so does the rule.

---

[1]  Appeal and Error, 3 C. J., sec. 1607, p. 1447, n. 44 New.
Municipal Corporations, 43 C. J., sec. 1163, p. 699, n. 6.
   [2]  Municipal Corporations, 43 C. J., sec. 3, p. 68, n. 62, 63, p. 69,
n. 66; sec. 5, p. 69, n. 77; sec. 187, p. 190, n. 29; sec. 796, p. 518, n. 64;
sec. 1058, p. 642, n. 92; sec. 1164, p. 700, n. 11–15.
   [3]  Constitutional Law, 12 C. J., sec. 74, p. 720, n. 32. Municipal
Corporations, 43 C. J., sec. 923, p. 576, n. 5.   Statutes, 36 Cyc., p. 1197,
n. 55.
   [4]  Municipal Corporations, 43 C. J., sec. 1164, p. 700, n. 11–15.
   [5]  Constitutional Law, 12 C. J., sec. 42, p. 699, n. 71.  Statutes,
36 Cyc., p. 1086, n. 82, p. 1115, n. 2.

*Appeal from District Court, Hill County; Charles A. Rose,
Judge.*

ACTION by A. J. Broadwater against William Kendig, as
City Treasurer of the City of Havre, and another. From a
judgment for plaintiff, defendants appeal. Reversed and re-
manded, with directions to dismiss the complaint.

*Mr. Victor R. Griggs* and *Mr. Wm. T. Pigott*, for Appellants,
submitted a brief; *Mr. Pigott* argued the cause orally.

No appearance on behalf of Respondent.

MR. JUSTICE GALEN delivered the opinion of the court.

This action was instituted by the plaintiff, a resident elector
and taxpayer of the city of Havre, to enjoin the defendant

---

5.  See 22 R. C. L. 534.

Kendig, as the city treasurer, from paying to W. C. McKelvey, as mayor of the city, a salary in excess of $50 per month, and to enjoin the mayor from collecting a greater amount. A motion to dissolve the temporary restraining order by the court issued having been denied, and a general demurrer to the complaint overruled, the defendants answered and the plaintiff filed a reply thereto. A hearing was had before the court, at the conclusion of which the court made findings of fact and conclusions of law in favor of the plaintiff and by its judgment decreed that the defendants be permanently enjoined as by the plaintiff in his complaint prayed. The appeal is from the judgment.

In substance the complaint alleges that on the first Monday of April, 1924, the defendant W. C. McKelvey was duly elected and qualified as the mayor of the city of Havre, and continued to hold such office for the term of two years thereafter until he succeeded himself at the election for mayor held on the first Monday of April, 1926; that prior to the last-mentioned date the salary of the mayor was, by ordinance duly passed, fixed at the sum of $600 per year; that on the twenty-second day of April, 1926, while McKelvey was acting as mayor, the city council, fraudulently contriving and conniving unlawfully to increase the salary of the mayor, and at a time subsequent to his election, passed an ordinance fixing the mayor's salary at the sum of $165 per month; that ever since the first day of May, 1926, being the date of his induction into office for a second term, he has claimed and collected out of the public moneys in the hands of the city treasurer, and the treasurer has paid to him and will continue to pay, such increased salary, unless enjoined.

The answer admits the allegations of the complaint, except that prior to and at the time of the election in April, 1926, the salary of the mayor was, by ordinance duly passed and enacted, fixed at $600 per year; and affirmatively it is averred that on March 18, 1918, Ordinance No. 153, fixing the salary of the mayor at $1,600 per year, was duly passed and enacted

and remained in full force and effect on April 22, 1926, when the ordinance in question raising the mayor's salary to $165 per month was passed; that Ordinance No. 191, passed on February 21, 1924, purporting to fix the mayor's salary at $600 per year, was not regularly adopted and is therefore null and void; and that on April 22, 1926, the mayor and city council duly, regularly and lawfully passed Ordinance No. 208, whereby the mayor's salary was fixed at $165 per month, which ordinance is now and ever since its passage has been in full force and effect.

The reply denies the alleged invalidity of the proceedings in the adoption of Ordinance No. 191, fixing the mayor's salary at $600 per year; denies that Ordinance No. 153 was in force and effect, and denies that the mayor and city council duly, regularly, or lawfully passed Ordinance No. 208. Further, it is averred that the mayor did for two years next before the first day of May, 1926, accept salary under Ordinance No. 191 at $600 per year and is therefore estopped to claim that Ordinance No. 191 was unlawfully passed or that it is null and void. It is further alleged that neither Ordinance No. 153 nor Ordinance No. 208 were regularly or lawfully passed, and that when the mayor took office for a second term on May 1, 1926, Ordinance No. 208 was void and of no effect. It is then pleaded in closing that the mayor, having claimed and alleged the invalidity of certain ordinances by reason of irregularity in their passage, is now estopped to claim that Ordinance No. 208 is a valid or subsisting ordinance.

At the trial it was admitted that the defendant McKelvey as mayor received and collected as his salary for the office of mayor between May, 1924, and May, 1926, the sum of $600 per year; and that since May, 1926, he had received a salary of $165 per month. Ordinances Nos. 191 and 208 were offered and received in evidence without objection, and the plaintiff then rested his case. Evidence was thereupon introduced by the defendants whereby it was sought to show that Ordinance No. 191 was not regularly passed; and Ordinance No.

153 was offered and received in evidence. The defendants then
rested. Additional proof in rebuttal and surrebuttal is not
necessary to be considered.

The question involved is whether the mayor is entitled to
receive the increased salary provided for by Ordinance No.
208 during his second term of office.

On this appeal we have not been favored with either oral
argument or a brief by the respondent in support of his
theory as to the basis of the cause of action attempted to
be stated in his complaint. Therefore we must look to the
pleadings, the proof, and the findings of the court upon which
the judgment is predicated. It is obvious to us that the
[1] complaint was drafted on the theory that section 31 of
Article V of the state Constitution is applicable, whereby it
is provided, ''No law shall extend the term of any public
officer, or increase or diminish his salary or emolument after
his election or appointment''; consequently, that the defendant
McKelvey should not be permitted to benefit by the enact-
ment of the ordinance increasing the salary of the mayor,
since it was not enacted until after his election to the office
for a second term. That such was the trial court's view
of the question involved and of the case as presented is re-
flected by its findings of fact and conclusions of law, to the
effect that, since the ordinance providing for an increase in
the mayor's salary ''was proposed for final passage on the
nineteenth day of April, 1926, and was passed on final read-
ing on the twenty-second day of April, 1926,'' and on the
later date was by the mayor approved, and since the mayor's
second term of office began on the third day of May, 1926,
and the ordinance providing for such salary increase did not
become effective until May 22, 1926, the defendant McKelvey
''could not take or receive a salary under said ordinance
* * * during his said term of office''; and that the ordi-
nance providing for an increase of salary for the office of
mayor having been passed and become effective during the

520 Broadwater v. Kendig et al. [Oct. T. '27

term of office of McKelvey, "he cannot legally collect any salary under said ordinance."

In our opinion, section 31 of Article V of the Constitution has no application whatsoever to the mayor or other city officers, and it has been given such interpretation and construction by our legislature by the enactment of section 5026 of the Revised Codes of 1921, of Chapter 42 of the Political Code, which Chapter deals exclusively with "officers and elections" in cities and towns. That section explicitly provides that "the salary and compensation of an officer must not be increased or diminished during his term of office."

The language employed in the constitutional provision to the effect that *"no law"* shall increase or diminish the salary of any public officer "after his election" is embodied in the Article which deals specifically with the "legislative department" of the state, and the Article is directed exclusively to the legislative branch of the state government—i. e., to statutory enactments by the legislative assembly, and not to the ordinances enacted by a municipality under authority especially conferred upon it by virtue of state legislative enactments. (*State ex rel. Teague* v. *Board of Commissioners,* 34 Mont. 426, 87 Pac. 450.) Such view finds general support by the authorities, the distinction underlying the constitutional and statutory provisions being clearly shown and well stated by the supreme court of Pennsylvania in the case of *Baldwin* v. *Philadelphia,* 99 Pa. 164, wherein it is said: "The ordinance of councils by which the plaintiff's salary was increased is not a law, and therefore does not come within the constitutional prohibition. It is a mere local regulation for the city of Philadelphia. It has perhaps the force of law in the community to be affected by it, but it is not prescribed by the supreme power, it concerns only a subdivision of the state, and does not rise to the dignity of a law. There is no ambiguity in this section of the Constitution. It is clear and explicit. But when we consider it in connection with the other portions of the third Article, there is no room for doubt. It is the Article upon

'legislation,' and is very elaborate. It contains thirty-three sections, and is throughout a restraint upon the powers of the General Assembly. It imposes numerous restrictions upon the mode by which laws shall be passed, and prohibits legislation upon a large variety of subjects. When, therefore, section 13 declares that 'no law shall extend the term of any public officer, or increase or diminish his salary or emoluments, after his election or appointment,' the obvious meaning is that the General Assembly shall not pass such a law. There is nothing in the Article, even by implication, that would justify us in extending the word 'law' to the ordinances of a city. Such an interpretation would not be expounding the Constitution; it would be altering it."

A city is a body politic and corporate, established by law [2] to assist in the government of the state, with delegated authority to regulate and administer the local and internal problems without powers other than are expressly conferred and restricted as may be prescribed. (*Coyle* v. *McIntire,* 7 Houst. (Del.) 44, 40 Am. St. Rep. 109, 30 Atl. 728.) City ordinances are the laws of the corporate district in contradistinction to laws enacted by the legislative assembly of the state, and their charter granting their powers and placing restrictions on them. (See Anderson's Law Dictionary, p. 738; *Mayor Rutherford* v. *Swink,* 96 Tenn. 564, 35 S. W. 554.) And as to city officers, "there is no such implied obligation on the part of municipal corporations, and no such relation between them and officers which they are required by law to elect, as will oblige them to make compensation to such officers, unless the right to it is expressly given by law, ordinance, or by contract. Officers of a municipal corporation are deemed to have accepted their office with knowledge of, and with reference to, the provisions of the charter or incorporating statute relating to the services which they may be called upon to render, and the compensation provided therefor." (Dillon on Municipal Corporations, 5th ed., sec. 422.)

Applying, then, the limitations prescribed by the statute, the ordinance providing for an increase in salary for the office was not enacted *"during his term of office,"* but, rather, during a previous term, and the mayor is entitled to the increased salary prescribed, unless there be merit in the suggestion that, while the ordinance was enacted during a previous term, it could not and did not become operative until he had qualified and entered upon a second term, thus occasioning an increase in his salary *"during his term* of office." It is provided by statute, so far as applicable, that "no ordinance or resolution passed by the council of any city or town shall become effective until thirty days after its passage, except," etc. (Sec. [3, 4] 5060, Rev. Codes 1921.) Such statutory provision applies alike to all such ordinances enacted by a city, and becomes a part thereof, for they must be enacted with such express limitation as to when they are to become effective whether mentioned in the ordinance or not. The statute is paramount. In our opinion it is the *time of the enactment* of the ordinance providing for the change of salary rather than the *effective date* which is controlling. A statute to take effect *in futuro* is a law *in praesenti.* An Act has a potential existence upon its passage despite the fact that its effective day is postponed. "That a statute or constitutional provision may have a potential existence, but which will not go into actual operation until a future time, is familiar law." (*State* v. *Dirckx,* 211 Mo. 568, 111 S. W. 1, citing *State* v. *Wilcox,* 45 Mo. 464; *State* v. *Pond,* 93 Mo. 625, 6 S. W. 469; *Ex parte Snyder,* 64 Mo. 61; see, also, *State ex rel. Otto* v. *Kansas City,* 310 Mo. 542, 276 S. W. 389.)

Judge Dillon, in his work on Municipal Ordinances, says: "Municipal ordinances, otherwise valid, may, like an Act of the legislature, be adopted to take effect in the future." (Sec. 575, 5th ed.)

It is true that the constitutional provision adverted to and the statute are both calculated to subserve a similar purpose; but the language employed is quite different. It is to be

observed that the Constitution prohibits the increase or decrease of salary of a public officer *"after* his election," whereas the statute forbids such a change being made in the salary of an officer *"during* his term of office." Such being the case, the defendant McKelvey had not entered upon his second term when the ordinance was *passed,* although it did not become operative for twenty-two days after his induction for a second term. The words used in the statute, "during his term of office," mean the term the officer is then serving, and cannot by any stretch of language be made to cover a previous term.

In his treatise on Public Officers, section 465, Mr. Throop says: "In the United States, such provisions are very frequently found in the Constitution of the several states, and in statutes defining the powers and duties of municipal bodies, or the boards of officers thereof; and are usually made applicable to an increase or diminution during the term held by the officer at the time." And Professor Mechem in his work on Public Officers, section 858: "Although the officer is not entitled to an increase made during his term, he may, if he be re-elected or reappointed, have it during his second term."

The rule established by constitutional provision as well as by [5] the statute must be strictly enforced, provided the reason underlying it is present; whenever the reason for it ceases, so does the rule. (*State ex rel. Jackson* v. *Porter,* 57 Mont. 343, 188 Pac. 375.) So here the reason for the rule is plain; its purposes are manifest, but the reason underlying the statutory provision is not present. The legislature did not follow the language employed in the Constitution, and evidently had good reason for deviating therefrom. At any rate, we must apply the language of the statute as we find it.

The judgment is reversed and the cause remanded to the district court of Hill county, with directions to dismiss the plaintiff's complaint.

*Reversed and remanded.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES MYERS, STARK and MATTHEWS concur.